WALLIN *v.* ARCADIA & BETSEY RIVER RAILWAY CO.

1. RAILROADS—MASTER AND SERVANT — NEGLIGENCE — INTOXICATION OF EMPLOYÉ—PERSONAL INJURIES.

Under 2 Comp. Laws, §§ 6284, 6285 (3 How. Stat. [2d Ed.] §§ 6638, 6639), prohibiting the employment by railroads of servants who use intoxicating beverages, there is no civil liability arising against the corporation for violation of the statute, which is penal in its nature and adds nothing to the common-law liability.

2. MASTER AND SERVANT—RAILROADS—INCOMPETENT SERVANTS.

Accordingly, the master was not liable to an employé injured by the negligence of a freight conductor while under the influence of intoxicants, unless the conductor had become incompetent by reason of his use of intoxicating liquors, and the railroad company knew or ought to have known of the alleged incompetency: and the trial court erred in submitting the case to the jury on the theory that defendant was liable if it had notice of his use of intoxicants.

3. SAME.

Where plaintiff attempted to open with his hand a coupler which had failed to work when the engineer had attempted to make the coupling, and had entered between the cars while they were standing at rest, believing that the locomotive would not be moved until he gave the signal, and where

the conductor appeared and gave the signal without plain-
tiff's knowledge, plaintiff was not chargeable with contribu-
tory negligence, as a matter of law, for taking the dangerous
way to perform the duty.

4. SAME—ASSUMPTION OF RISK.

Plaintiff did not assume the risk of the conductor's intemper-
ate habits, of which plaintiff had knowledge, since defend-
ant violated a statutory duty.  2 Comp. Laws, § 6284, 3 How.
Stat. (2d Ed.), § 6638.

5. SAME—STATUTES.

It was not necessary that plaintiff plead the statute in order
to avail himself of it in defense of the charge that he assumed
the risk.

Error to Manistee; Withey, J.  Submitted January
16, 1912.  (Docket No. 76.)  Decided November 8, 1912.

Case by Charles A. Wallin against the Arcadia &
Betsey River Railway Company for personal injuries.
Judgment for plaintiff.  Defendant brings error.  Re-
versed.

*Kleinhans & Knappen* (*Dovel & Dovel,* of counsel),
for appellant.

*D. G. F. Warner* (*Smurthwaite & Belcher,* of coun-
sel), for appellee.

BROOKE, J.  Plaintiff recovered a judgment for dam-
ages for injuries received on February 19, 1909, while in
the employ of defendant.  Defendant operates a railroad
21 miles long between Copemish and Arcadia.  Upon this
road it runs a single mixed train, one round trip each day.
The train crew at the time of the accident consisted of
Conklin, the conductor, Lang, the engineer, and plaintiff,
who acted as fireman on the road and brakeman at switch-
ing points.  This position plaintiff had held for a total
period of three years, one-half of which immediately pre-
ceded his injury.  At Copemish there is a union depot
used by the Ann Arbor Railway, the Manistee & North-
eastern Railway, and defendant.  Upon arrival at the

depot at about 10:20 in the morning, it is customary for Conductor Conklin to take the mail from that point to the post office. After discharging the passengers, the train is run a few hundred feet to a switch, then upon a side track in a northwesterly direction to defendant's freight depot. Necessary switching operations are then carried on; plaintiff doing the switching when the conductor is absent.

On the morning in question, the conductor absented himself from the train as usual. The "peddler" or local freight car had been left in front of the freighthouse, and plaintiff and Lang, the engineer, had done the necessary switching; the conductor being absent. The engine was then run back to the freighthouse to be coupled to the "peddler" for the return trip. When the tender of the engine was first pushed against the "peddler," the coupling failed to "make." The impact pushed the "peddler" some four feet away from the tender. Plaintiff, who had been standing upon the tool box at the back of the tender, jumped off and crossed to the "peddler," and with his hand attempted to open the coupler on that car. While in the act of opening the coupler, the engineer, in obedience to a signal from Conklin, who, it was claimed, had returned without plaintiff's knowledge and was standing on the freighthouse platform, backed the tender against the "peddler," crushing plaintiff's hand between the couplers.

Four negligent acts of defendant are counted upon by plaintiff. The first three were eliminated by the circuit judge. As the plaintiff does not appeal, it is necessary to consider only the fourth, which is as follows:

"That the conductor of the train was incompetent, in that he was in the habit of getting intoxicated and was unfit to discharge the duties of a conductor, which was known to the defendant, and that at the time of the injury he was under the influence of intoxicating liquors to such an extent as to make his condition the real or proximate cause of the injury."

Upon this question, the court charged the jury as follows:

" It was the duty of the defendant in this case to use reasonable diligence to know that its conductor on that train was a sober man, not in the habit of drinking intoxicating liquor as a beverage. That was a continuing duty. A duty that was upon the defendant all the time. From the time that it employed Conklin until the accident in question. If the defendant neglected that duty, and did not observe its duty in regard to it and exercise such diligence by observation and inquiry, as a reasonably prudent employer should and would have done, and the plaintiff's injury is attributable to that neglect, then the plaintiff is entitled to recover. It is an undisputed fact in this case that some of the officers of the defendant knew that the conductor, Conklin, drank intoxicating liquors more or less, because they came upon the stand and told you that they knew it, and drank with him in saloons. So that it appears without contradiction in this case that the conductor drank intoxicants as a beverage. So they were chargeable with the knowledge of the fact that he did drink intoxicating liquors as a beverage. But this alone would not entitle the plaintiff to recover, and it would not in itself afford a basis for recovery for the plaintiff, but it is a fact which is proper for you to consider to determine in connection with all the evidence in the case, whether or not the habits and condition of the conductor was the moving cause of the plaintiff's injury. The term, ' drunk,' or ' being drunk,' and ' intoxicated,' ' being intoxicated,' those terms have been used very frequently in your presence in this case. I say to you in that connection, that if on the occasion in question, the conductor, Conklin, was not in the normal, natural, legitimate exercise of his natural functions, and that he was appreciably out of the normal condition, so that he could not exercise the same ready care and judgment that he would do if he did not indulge in the drinking of intoxicating liquor, and that it contributed in an appreciable degree to his conduct on this occasion when he signaled back this engine, as he said he did, and wrought the injury to the plaintiff, without negligence on the part of the plaintiff which contributed thereto, the plaintiff is entitled to recovery in this case. On the other hand, if the drinking of Conklin on that day, if he did drink any, or on any other day, if he did drink any, did not disturb his mental balance, and left his judgment as alert, as keen, and accurate as it would be normally,

and in no manner contributed to his conduct, and to the fact of his signaling back the engine as he did, then the plaintiff is not entitled to recover, because it would not be the approximate cause of the injury. The inquiry, you see, narrows itself within close limits. It is in saying what the conductor's condition of mind was, and what his judgment and his alertness of mind might have been at that time, his correctness of judgment in what he should do and what he should not do. In determining that, you should take into consideration the testimony in the case bearing upon that subject. The testimony before you in regard to his drinking in the saloon, in regard to his drinking in the freighthouse when they were in the habit of eating lunches there. And his drinking at any time or place which the evidence points out. And you should take into consideration the testimony of the plaintiff for what you say it is worth as to his manner and the way in which he behaved himself and walked with him after the accident occurred, immediately after the accident occurred, and from there to the doctor's office, and while he was in the doctor's office, you should take into consideration the identical circumstances of the accident itself. Say whether a man of his experience, whose mind was clear and in its normal condition, whose judgment was without interference, would do as he did there, or would not do so unless it was interfered with. Take all these things into consideration and determine the truth of the matter, whether the conductor, Conklin, was at that time incompetent in the sense that he was not his natural self because of the use of intoxicating liquors. If he was not, the plaintiff may recover, if he was not himself negligent. If the conductor was his normal self, and acted as such on that occasion, then the plaintiff cannot recover in this case. * * * If you find the fault lay with Conklin, as I have described it to you, and that this was proven by the preponderance of evidence, as I have instructed you, then it is your business to find a verdict for the plaintiff. If you find that is not the case, that the responsibility was not with Conklin, because of his conduct, then the plaintiff is not entitled to recover, and he is not entitled to recover if his negligence contributed to the injury."

It is apparent from a perusal of the record that the learned circuit judge was of opinion that the statute ( 2 Comp. Laws, §§ 6284, 6285, 3 How. Stat. [2d Ed.]

§§ 6638, 6639) imposed upon the defendant a dif-
ferent and greater civil liability than it rested under
at common law. The proviso to section 6285 we think
clearly negatives this view. These sections occur under
the caption "Police Regulations," and are penal in char-
acter. They add nothing to the common-law civil lia-
bility of the defendant.

The eleventh request preferred by defendant is as fol-
lows:

"If plaintiff is entitled to recover in this case at all, it
is only because of defendant's alleged negligence in em-
ploying and continuing to employ, its conductor, Conklin.
Defendant was not negligent in keeping in its employ its
conductor, Conklin, unless Conklin was incompetent be-
cause of his alleged use of intoxicating liquors, while in
charge of the train, and unless defendant had knowledge,
or notice, of such alleged incompetence and thereafter re-
tained him in its employ. Unless, therefore, you shall
find, under the evidence, that Conklin was incompetent
to perform his duties because of the use of intoxicating
liquors, and that defendant had knowledge thereof, or that
he was an habitual drunkard so that defendant would be
charged with notice thereof, plaintiff cannot recover."

Under the theory upon which the case went to the jury,
we are of opinion that this request should have been given.
The declaration charges habitual intoxication on the part
of Conklin and a knowledge thereof on the part of defend-
ant. The charge as given predicates defendant's liability
upon the fact that it had knowledge of or was chargeable
with notice of the fact that Conklin used intoxicating
liquor as a beverage. Such knowledge or notice, un-
accompanied by knowledge or notice of incompetency,
would be insufficient ground upon which to base a com-
mon-law liability, and the statute is not by the declara-
tion, and in our opinion cannot properly be invoked as a
basis of liability. While the use of intoxicants in any
manner or degree by those charged with the responsibility
of caring for the movement of trains is to be reprehended,
it is nevertheless a matter of common knowledge that

many men are able to indulge in such use in moderation through a long lifetime without any appreciable diminution of their faculties.    The basis of defendant's liability at common law lies in the fact (if it be a fact) that its servant had become incompetent through the use of intoxicants of which fact defendant had knowledge or notice. *Hilts* v. *Railway*, 55 Mich. 437 (21 N. W. 878); *Johnson* v. *Railway Co.*, 162 Mich. 301 (127 N. W. 271).

The claim of defendant that plaintiff should not be permitted to recover because he selected the dangerous rather than the safe way of preparing for the coupling is without merit.    When he attempted to open the coupler, both cars and engine were at rest, and he believed the engine would not move until its engineer received a signal from himself.    Had they remained stationary, there would have been no danger.    We think he was not bound, as a matter of law, to apprehend that the conductor would appear and give the signal for the operation.    His conduct, under the circumstances, in all its detail, was a proper subject for the consideration of the jury upon the question of his negligence.

It is urged that, because plaintiff was aware of the alleged intemperate habits of Conklin, he therefore should be held to have assumed the risk of injury arising from Conklin's incompetency, induced by such habits, and that, by himself continuing in the service after he acquired such knowledge, he was guilty of contributory negligence.    We are of opinion that one cannot be charged with contributory negligence simply because he continues in his employment after knowledge of the breach of a statutory duty, and so long as his own acts in such employment are not negligently performed.

Were the duty imposed upon the defendant simply a common-law duty, it is, we think, clear that, with such knowledge of its breach as plaintiff possessed, he should be held to have assumed the risk by his contract of employment.    *Davis* v. *Railroad Co.*, 20 Mich. 105 (4 Am. Rep. 364).    But, where a duty is imposed by statute, we

have held that the master may not legally contract for its violation, and, therefore, that the servant does not assume the risk of such violation. *Sipes* v. *Starch Co.*, 137 Mich. 258 (100 N. W. 447); *Sterling* v. *Carbide Co.*, 142 Mich. 284 (105 N. W. 755); *Murphy* v. *Veneer Works*, 142 Mich. 677 (106 N. W. 211); *Swick* v. *Cement Co.*, 147 Mich. 454 (111 N. W. 110); *Syneszewski* v. *Schmidt*, 153 Mich. 438 (116 N. W. 1107); *Kleinfelt* v. *Coal Co.*, 156 Mich. 473 (121 N. W. 118, 132 Am. St. Rep. 532); *Van Doorn* v. *Heap*, 160 Mich. 199 (125 N. W. 11); *Rivers* v. *Electric Co.*, 164 Mich. 696 (128 N. W. 254, 131 N. W. 86).

We are of opinion that it was not necessary for plaintiff to plead the statute in order to avail himself of it as a relief from the charge of assumption of risk.

It is unnecessary to discuss other assignments of error. The judgment is reversed, and a new trial ordered.

MOORE, C. J., and STEERE, MCALVAY, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.