578

## NEW YORK TELEPHONE CO. v. BECKERS et al.

Circuit Court of Appeals, Second Circuit.
February 11, 1929.

No. 45.

Charles T. Russell, of New York City (Irving. W. Young, Jr., of New York City, of counsel), for plaintiff in error.

E. C. Sherwood, of New York City (Clarence S. Zipp, of New York City, of counsel), for defendants in error.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). ▉▉▉ At the close of the plaintiffs' case, and again at the close of all the evidence, the defendant made the customary motions to dismiss the complaint upon the ground that no negligence had been proved against the defendant, and that Beckers had affirmatively shown himself guilty of contributory negligence. The motions were denied, and those issues were decided adversely to the defendant by the verdict of a jury. We are now asked to set aside that verdict. This an appellate court cannot do, unless there is no credible evidence from which the conclusion of fact as found by the jury can be legally inferred. The citation of authorities for this long-established rule would be superfluous.

The questions presented make necessary a detailed examination of the plaintiffs' version of the accident. Beckers testified that he was driving north on South Broadway, and when about 10 or 15 feet from the curb line of the intersecting Carhart avenue he reduced his speed to about 15 miles an hour.

He looked to the right and to the left for approaching traffic, and, seeing none, proceeded to advance across Carhart avenue at the same speed. At the time he looked he was about 5 feet south of the south curb line of Carhart avenue, and he says he could not see to the left more than 15 or 20 feet along Carhart avenue, because of shrubbery and a tree with low branches on the southwest corner. He first saw the defendant's truck when it was just about half way across South Broadway and when the seat of his own car had passed 3 or 4 feet beyond the south curb line of Carhart avenue. The truck was then only 5 feet away, and was proceeding in the center of the avenue at a speed which seemed to him 45 or 50 miles an hour. Neither car appears to have sounded any signal at any time.

Beckers attempted to avoid collision by swerving to the right, but his left front fender struck the side of the truck, throwing his car violently toward the right, so that his front wheels ran over the sidewalk and up a grassy bank of the premises at the southeast corner of the intersecting streets. The truck, he says, proceeded half way down the block before it was brought to a stop. Beckers' car was not overturned, nor was he thrown out; but he was thrown violently forward against the framework of his car, thus sustaining the injuries complained of. Although bruised and bleeding from cuts, he was able to get out of his car without help. The testimony of Burpo, the other witness for the plaintiffs, need not be recited; it presented certainly no stronger case than Beckers' own testimony. In fact, Burpo said that Beckers' car was going perhaps a little faster than the truck, and that the latter was stopped within 10 or 15 feet of the place of collision.

There was sufficient in this story to justify leaving to the jury the question of defendant's negligence. If the truck was proceeding at any such rate of speed as that to which Beckers testified, its driver was clearly negligent. Several witnesses contradicted Beckers as to the speed of the truck; but it is the jury's province, not ours, to weigh the testimony.

■ The only serious problem is whether the trial court should not have directed a verdict, on the ground that the evidence so conclusively proved contributory negligence as to be fatal to any recovery. Beckers says that, when he first looked to the right and left, he was about 5 feet south of the southerly curb of Carhart avenue. He explains that his view was obstructed so that he could see only 15 or 20 feet along the avenue toward the left.

If we accept his statement of his distance from the curb—and he reiterated it at least three times—it is perfectly apparent that his view was not so limited as he says. The photographic exhibits, which disclose the physical conditions at the intersection, make it certain that no shrubbery or low branches interfere with the view of one who is so near the curb as plaintiff says he was. If this was the point at which he looked, defendant's truck must certainly have been within his vision. From this point to the point to which his car had moved when he says he saw the truck was a distance of about 10 feet, and he would travel that distance in half a second at the speed he says he was proceeding, 15 miles an hour. The truck was then halfway across South Broadway, so that, even if it were traveling at the rate of speed Beckers ascribed to it, it could not have covered more than 35 or 40 feet during the same half second.

■ If we accept the speeds and distances as plaintiff Beckers repeatedly gave them, the conclusion is irresistible that the approaching truck was visible when he says he looked, and that he was guilty of negligence in not seeing it. As this court said in Pennsylvania R. R. Co. v. Cutting, 5 F.(2d) 936, at page 937: "To say one looked and did not see, when there are no obstructions and the view is clear, is so incredible that courts will charge contributory negligence in such a case as a matter of law." See, also, Weigaud v. United Traction Co., 221 N. Y. 39, 42, 116 N. E. 345; Dolfini v. Erie R. R. Co., 178 N. Y. 1, 70 N. E. 68. If, on the other hand, we assume that Beckers miscalculated the distance from the curb of the place where he says he looked, and that he was right only in his statement that he could see but 15 or 20 feet to his left on Carhart avenue, he was equally guilty of negligence in proceeding at 15 miles an hour without again looking.

■ It is true that cases may be found which say that how often or how thoroughly a person must look before crossing a street is a question of fact for the jury. Bauman v. Black & White, etc., Taxis Co., 263 F. 554, 556 (C. C. A. 2); Knapp v. Barrett, 216 N. Y. 226, 230, 110 N. E. 428. But these same cases assert his duty to use his eyes for self-protection, and they assume a view through sufficient space to give him reasonable assurance of safety. Looking only when the view is so obstructed as not to give such assurance is no better than not looking at all. The rule that a traveler approaching a crossing must look at a time when it is possible to look effectively is as applicable in all reason to

580

street crossings as to railroad crossings, even though the degree of danger, and consequently the standard for what is due care, may differ in the two situations. With respect to the latter type of crossing, it is said in Kutchma v. Atchison, T. & S. F. Ry. Co., 23 F. (2d) 183 (C. C. A. 8): "There are many other cases in this circuit applying the rule that a traveler approaching these known places of danger must look and listen at places and at times where and when his senses will give notice of approaching trains. * * *" See, also, Baltimore & O. R. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645.

On his own testimony, Beckers either failed to see the approaching truck, if he looked when his vision up the intersecting street was unobstructed, or he proceeded across at 15 miles an hour without signaling and after looking only when he could see but 15 or 20 feet up the intersecting street. In either case we think he proved himself guilty of contributory negligence as a matter of law. In Baltimore & O. R. R. Co. v. Goodman, supra, we are admonished that, while very generally the question of due care is left to the jury, nevertheless, "when the standard is clear, it should be laid down once for all by the courts."

We have not overlooked the fact that Beckers was approaching from defendant's right; but, even though he had the right of way, he must exercise reasonable care for his own safety. Ward v. Clark, 232 N. Y. 195, 133 N. E. 443; Shuman v. Hall, 246 N. Y. 51, 158 N. E. 16.

Upon the evidence presented, it was error to deny the defendant's motion to dismiss. Accordingly, the judgment is reversed, and the cause is remanded.